MARY E. McVOY

*v.*

KARL BAUMANN et al.

[Decided January 18th, 1922.]

1. A suit by vendee or his assigns for the specific performance of a contract of sale of lands in this state is, by reason of existing statutory provisions, a suit *quasi in rem*, and if proper proceedings for so-called "service by publication" be duly had, jurisdiction may thereby be acquired for a valid and effectual decree against non-resident defendants who neither appear voluntarily nor are served with process in this state.

2. A vendor, under a contract of sale of real estate. is in equity a trustee for vendee; and any subsequent grantee, mediately or immediately, from vendor, takes the lands impressed with such trust and is a like trustee, unless he or. one of his predecessors in title be a purchaser for value and without notice.

3. Apart from statute, a vendee suing for specific performance against a subsequent grantee from vendor, has not the burden of proving that such subsequent grantee (and all intermediate grantees) took with notice or without paying valuable consideration.

4. Under present statutes, in such a case, the burden still remains on defendant to establish that the subsequent grantee (or some one of several successive subsequent grantees paid valuable consideration), but the burden of proof as to notice is shifted so as to require vendee to prove that all subsequent grantees who paid value took with notice.

5. Even if a contract of sale of lands, not acknowledged by vendor, be in fact recorded, there is no constructive notice thereby to a subsequent grantee.

6. An assignee from vendee of a contract for the sale of lands may, upon performance of the terms required by the contract to be performed by vendee, have specific performance against vendor, notwithstanding that vendor could not bring such a suit against the assignee.

7. Where vendor under a contract of sale of lands subsequently conveys to his wife (who was not a party to the contract), and she conveys to a third person, the wife is at least a proper party in a suit by vendee for specific performance.

On final hearing.

*Mr. Augustus C. Nash,* for the complainant.

*Mr. Earle C. Merrill,* for the defendants.

BUCHANAN, V. C.

This is a bill for specific performance of a contract for the sale of lands located in this state between Karl Baumann, the owner, as vendor, and Herbert C. McVoy. as vendee. The covenant was to convey to vendee, his heirs or assigns. Between the making of the contract and the date for consummation it was arranged (apparently verbally) among all the parties concerned that the deed should be made to the vendee's wife, the present complainant. On the date for consummation specified in the contract, the vendor attended, with a deed duly executed and acknowledged by himself and his wife (who was not a party to the written agreement), which deed named complainant as grantee; and the vendor at that time asked that a written assignment of the vendee's interest in the contract be executed by vendee to complainant, which was then and there done. A resale of the premises in two parcels had been arranged by vendee, and deeds duly executed by complainant and vendee had also been prepared. Complainant was expecting to put through the several transactions at the one time, and to pay the sum due to vendor out of

the moneys to be received from the "sub-vendees." The latter, however, did not appear, and after waiting a long time Baumann and McVoy both left. Baumann later refused to perform his contract, and complainant, after causing tender to be made of the sum due, filed her bill. In the meantime she had the contract recorded, although it was acknowledged only by the vendee and not by the vendor.

Prior to the filing of the bill, but after the recording of the contract, Baumann conveyed the premises in question to his wife, and then joined with her in a conveyance to Cooley, the third defendant.

All three defendants were non-residents of this state at the time of the filing of the bill, and the usual so-called "order of publication" was taken against them, requiring them to appear and answer on or before the date therein fixed, and providing that the statutory notice of such order be served personally on the defendants within ten days or be published and mailed (in the usual manner and form).

No proof was made or filed, either of service or of publication and mailing, but notice obviously reached the defendants, for prior to the expiration of the period of publication application to this court was made by their solicitor for leave to appear specially for the said defendants to move the dismissal of the bill as against all of the defendants, on the ground of "lack of jurisdiction; the said defendants not being residents of this state and no personal service of process having been made, but service having been attempted to be made by publication."

Orders granting such leave were entered, and the motions for dismissal were made, but, of course, not granted. Instead an order was entered "that the motion to dismiss the complaint as to Karl Baumann and Bertha Baumann for want of jurisdiction be denied, but that said defendants may file an answer under their special appearance, subject to the condition that if on final hearing the motion to dismiss for want of jurisdiction is denied, their answer shall stand as a general appearance."

A similar order was also entered as to the defendant Cooley—both orders being entered prior to the expiration of the time limited in the order of publication.

Answers were thereafter duly filed, and after replications, an order of reference was made, and an order of designation—both consented to by defendants' solicitor—and the case was brought on for final hearing, pursuant to the designation.

At the hearing the motion to dismiss for lack of jurisdiction was renewed, and the objection thus interposed requires preliminary determination, for, if this court be without jurisdiction, it cannot pronounce a valid decree one way or the other upon the merits of the case.

It may not be amiss to point out here that defendants, in their original attempt to bring forward this objection, acted both prematurely and by improper motion. The ground of their objection is, and was then, that the cause of action is one strictly *in personam*, and that jurisdiction has not been acquired over the persons of the defendants. (The difference is obvious between this situation and a contention that the court is without jurisdiction of the subject-matter of the controversy.) Their original motion was to dismiss the bill upon the ground stated and it was made before the record showed the service of process or any substituted service.

Assuming the cause of action to be one strictly *in personam*, it is surely no ground for dismissal of the bill that service has not been made (except, perhaps, where there has been such long continued delay as to constitute laches. *Dey* v. *Hathaway, 41 N. J. Eq. 419.*) Not only is this true where there is nothing of record to indicate that service has been made, but also in a case where it appears by the record that service has duly been made, but defendant contends the contrary. In the former case there is nothing upon which defendant can take any action. After proof of service appears of record he may either move to set aside the service or the proof thereof, or, if he be a non-resident, he may raise the question by setting up in his answer a denial of the acquisition of jurisdiction over his person. *Chancery Rules 52, 53; Groel* v. *United Electric Co., 69 N. J. Eq. 397; Wilson* v. *American Palace Car Co., 65 N. J. Eq. 730; Ewald* v. *Ortynsky, 78 N. J. Eq. 527; Brimberg* v. *Hartenfeld Bag Co., 89 N. J. Eq. 427.*

There would seem to be no difference in principle whether the

contested service of process be of service of the ordinary subpœna or substituted service under an order of publication. The latter is strictly a service of notice rather than of process, but is just as essential, under our statute, to the acquisition by the court of the right to proceed with the disposition of the cause. Until, therefore, there had been filed the proofs of service or publication of notice, pursuant to the order of publication, not only could the court not proceed with the cause, but there was nothing upon which the defendants could take any action. No objection could be made by them to the entry of the order of publication itself. *Kirkpatrick* v. *Post, 53 N. J. Eq. 591; affirmed, Ibid. 641.*

Returning to the main issue. the question is whether or not this court can pronounce a valid decree in a specific performance suit by vendee against vendor and vendor's grantee, where the defendants are non-residents of this state not served with process in this state nor appearing voluntarily, but served pursuant to our statute under an order of publication.

Clearly, if the action be one strictly *in personam*, the question stated must be answered in the negative. *McGuinness* v. *McGuinness, 72 N. J. Eq. 381.* It is equally clear that in former times such a suit for specific performance was an action strictly *in personam*. The prayer of the bill was for a decree that defendant convey the lands in question to complainant; the decree, if granted, was that defendant convey; and it was only by defendant's obeying the decree, either with or without compulsion, that complainant could obtain the relief sought by his bill and awarded to him by the decree, namely, the title to the lands. *Amparo Mining Co.* v. *Fidelity Trust Co., 74 N. J. Eq. 197* (at p. 203).

Although equity acts, ordinarily and unless empowered by legislative authority, only *in personam*, nevertheless, this state. as a sovereign state, has jurisdiction and control over all property situate within its borders. As is said by Mr. Justice Brewer in *Arndt* v. *Griggs, 134 U. S. 316* (at p. 320) : "It [the state] has control over property within its limits; and the condition of ownership of real estate therein, whether the owner be stranger or citizen, is subjection to its rules concerning the holding, the

transfer, liability to obligations, private or public, and the modes of establishing title thereto. It cannot bring the person of a non-resident within its limits—its process goes not out beyond its borders—but it may determine the extent of his title to real estate within its limits; and for the purpose of such determination may provide any reasonable methods of imparting notice."

This language is quoted with approval by the same court in the opinion of Mr. Justice Brown in *Roller* v. *Holly, 176 U. S. 398* (at *p. 405*).

In *Arndt* v. *Griggs* the question before the court was, as is said in the opinion (at *p. 320*) : "What jurisdiction has a state over titles to real estate within its limits, and what jurisdiction may it give by statute to its own courts to determine the validity and extent of the claims of non-residents to such real estate?" The determination by the court was that "a state has power by statute to provide for the adjudication of titles to real estate within its limits as against non-residents who are brought into court only by publication," and that where a state has so provided by proper statute a decree quieting title entered in a suit conducted in accordance with such statute is not open to the objection by a non-resident defendant served only by publication, that it is an equity decree and can act only *in personam,* because the effect of such statutory provision is to make the proceedings and the decree substantially *in rem.* The same question, *inter alia,* was before the court in *Roller* v. *Holly, supra,* in regard to a proceeding to foreclose a vendor's lien on real estate, and the same determination was expressed.

These two cases being respectively on bill to quiet title and bill to foreclose vendor's lien, are not express and exact determinations of the question as affecting a bill for specific performance. Nevertheless, the language of the opinions is broad enough to comprehend the present proceeding, and the same conclusion, it seems to me, must needs be reached from the reasoning given.

The proceeding is one seeking to affect, by its ultimate result, the title to real estate in this state; to accomplish a transfer of the legal title thereto from defendant to complainant; to deprive defendant of such title and establish it in complainant.

The sovereign power of the state obviously extends to all questions of ownership, transfer, acquisition or deprivation of title to lands within its territorial limits, subject only to such limitations as arise under and by virtue of the constitution of the United States. *Cf. United States* v. *Fox, 94 U. S. 315* (at *p. 320*). Referring to the passage quoted, *supra,* from *Arndt* v. *Griggs,* a non-resident owner of lands is subject to the state's rules concerning the holding of title thereto, the transfer of title thereto, and the liability thereof to obligations, private as well as public. The same opinion quotes with approval from the opinion in *Dillon* v. *Heller, 39 Kans. 599,* including the following: "Has the state any power, through the legislatures and the courts, or by any other means or instrumentalities, to dispose of or control property in the state belonging to non-resident owners out of the state, where such non-resident owners will not voluntarily surrender jurisdiction of their persons to the state or to the courts of the state, and where the most urgent public policy and justice require that the state should assume jurisdiction over such property? * * * We think a sovereign state has the power to do just such a thing. * * * To obtain jurisdiction of everything within the State of Kansas, the statutes of Kansas may make service by publication as good as any other kind of service."

In the same opinion is also quoted with approval an excerpt from the opinion of the same court in *Pennoyer* v. *Neff, 95 U. S. 714* (at *p. 727*), including the following: "Such service [by publication] may also be sufficient in cases where the object of the action is to reach and dispose of property in the state, or of some interest therein, by enforcing a contract or lien respecting the same. * * * In other words, such service may answer in all actions which are substantially proceedings *in rem*. * * * It is true that in a strict sense a proceeding *in rem* is one taken directly against property, and has for its object the disposition of the property without reference to the title of individual claimants; but, in a larger and more general sense, the terms are applied to actions between parties, where the direct object is to

reach and dispose of property owned by them or some interest therein."

*Arndt* v. *Griggs* also quotes, with approval in support of its determination, from *Boswell* v. *Otis,* 9 *How.* (*U. S.*) *336* (at *p. 348*) : "Jurisdiction is acquired in one of two modes—first, as against the person of the defendant, by the service of process; or, secondly, by a procedure against the property of the defendant within the jurisdiction of the court. In the latter case, the defendant is not personally bound by the judgment beyond the property in question. And it is immaterial whether the proceeding against the property be by an attachment or bill in chancery. It must be substantially a proceeding *in rem.* A bill for the specific execution of a contract to convey real estate is not strictly a proceeding *in rem,* in ordinary cases; but where such a procedure is authorized by statute on publication, without personal service or process, it is substantially of that character."

Moreover, even in *Hart* v. *Sansom, 110 U. S. 151* (an opinion which has been frequently misconstrued, and which has been explained and expressly delimited in later opinions), it is said (at *p. 154*) : "Upon a bill for the removal of a cloud upon title, as upon a bill for the specific performance of an agreement to convey, the decree, *unless otherwise expressly provided by statute* [the italics are mine], is clearly not a judgment *in rem,* establishing a title in land, but operates *in personam* only, by restraining the defendant from asserting his claim, and directing him to deliver up his deed to be canceled, or to execute a release to the plaintiff."

I conclude, then, that it is within the power of this state to provide by statute that this court may hear and determine a suit for specific performance of a contract for the sale of lands in this state, brought by vendee against a non-resident vendor, notwithstanding jurisdiction be not had by the court over the person of the vendor, after due proceedings for notification to vendor of the pendency of such suit, and that title to the lands shall pass to such vendee upon a determination in his favor; or, to put it a little differently, a valid judgment or decree, transferring title to lands in the state from vendor to vendee may be entered in

this court in a suit for specific performance where the vendee has been served only with notice and not with process, provided the suit be substantially *in rem;* and such suit is so substantially *in rem* where the state has by statute provided for the service of notice on such non-resident vendor in such cases and has also provided that upon such judgment or decree title shall pass irrespective of any action by the vendor.

That the requisite legislative enactments have been made by this state, I think there can be little doubt. The provisions for the acquisition of jurisdiction over absent defendants are to be found in sections 12, 18 of the Chancery act. *Rev. 1912.* They do not, in express and specific terms, refer to a suit for specific performance, nor to suits affecting lands, but their application is comprehensive and general and extends to all cases where under recognized principles of law suits might be instituted against non-resident defendants. *Roller* v. *Holly, supra* (at *p. 406*); *Amparo Mining Co.* v. *Fidelity Trust Co., 75 N. J. Eq. 555* (at *p. 560*). By section 45 of the Chancery act (*Rev. 1902*), a decree of this court for the conveyance of lands, or any interest therein, not complied with by the parties decreed to convey, is made of the same force and effect as if the conveyance had been executed pursuant to the decree. The legislature has thus made the decree the actual instrumentality accomplishing the transfer of title in all cases except where there is an exact compliance with the decree. *Cf. Weehawken Ferry Co.* v. *Sisson, 17 N. J. Eq. 475.* It may be noted that the *form* of the decree must be personal—for a conveyance—otherwise, of course, the statute is not operative. But it is equally obvious that the transfer of title is accomplished by the state through the decree of this court, and not by the act of the parties, unless they convey in absolute and exact compliance with the terms of the decree, and this is of course utterly irrespective of whether or not the defendants be non-residents. The effect of the statute, as it has been said, makes the decree self-executing. In the language of Vice-Chancellor Pitney in *Fee* v. *Sharkey, 59 N. J. Eq. 292* (adopted by the court of errors and appeals, *Ibid., 60 N. J. Eq. 446,* and, again, in *Goldstein* v. *Curtis, 65 N. J. Eq. 382*): "The

strength of the complainant's title does not rest in any deed of conveyance executed by the defendant, but in the declaration and decree of this court establishing his right in equity" * * * this, in the course of holding, that it was not necessary for a married woman to acknowledge a conveyance which had been decreed in chancery, nor, indeed, for her to make any conveyance at all.

It may also be noted that section 44 of the Chancery act gives to decrees in chancery the same force and effect as judgments at law in the supreme court.

It seems to me, therefore, in view of the several statutory enactments referred to, that a suit in this court, by vendee against vendor for specific performance of a contract to convey lands in this state, is in this state a suit *quasi in rem,* or "substantially *in rem,*" and that jurisdiction is acquired by this court even though the vendor be a non-resident and neither appears voluntarily nor is served with process in this state, if there be an order of publication in conformity with the statute and service or publication of notice pursuant to such order. Nor does the fact that the defendant vendor conveyed the lands subsequent to this contract and before suit brought, and that one of the defendants is the grantee under such conveyance and also a non-resident, make any difference on this question of jurisdiction. It is still the question of the rights of complainant and the defendants in the lands in this state. The precise question—that is, in relation to a suit for the specific performance of a contract of sale of real estate—seems never to have been adjudicated in this state; and, indeed, to have arisen but rarely in other jurisdictions. The weight of authority is, however, in favor of the acquisition of jurisdiction by the constructive service. *Cf. O'Sullivan* v. *Overton, 56 Conn. 102; Mason* v. *Benedict, 43 La. Ann. 397; Tutt* v. *Davis, 13 Cal. App. 715.*

In Massachusetts it was held, in *Spurr* v. *Scoville, 3 Cush. 578,* that jurisdiction could not be acquired by constructive service in such a case, there being then no statutory provisions such as have been heretofore referred to. Legislation was thereafter adopted under which a trustee could be appointed to convey the property

in lieu of the non-resident defendant. In *Felch* v. *Hooper, 119 Mass. 52,* subsequent to this legislation, jurisdiction was sustained of a bill by a purchaser of lands, who had paid or tendered the purchase price and been given possession of the lands and prayed for legal title. The court expressly says that a bill for specific performance could not be sustained, but that the suit in question was a suit to enforce an implied trust. I confess it is difficult for me to see the distinction, for the equitable doctrine is, and has always been, that a vendor is a trustee of the lands for the vendee from the time of the making of the contract (*Cf. Hoagland* v. *Lalourette, 2 N. J. Eq. 254,* at *p. 256*), and the payment or tender of purchase price is of course a requisite demanded of a vendee suing for specific performance; and even though a trustee be appointed to convey the title, in the last analysis, it is the statute which transfers the title, since, otherwise, the trustee would have no title to convey.

In this state the principles have been repeatedly discussed in such cases as *Hill* v. *Henry, 66 N. J. Eq. 150; Andrews* v. *Guayaquil & Co., 69 N. J. Eq. 211; affirmed, 71 N. J. Eq. 768; Sohege* v. *Singer Manufacturing Co., 73 N. J. Eq. 537; Amparo Mining Co.* v. *Fidelity Trust Co., 74 N. J. Eq. 198; affirmed, 75 N. J. Eq. 555.* In *Hill* v. *Henry* the bill was one to quiet title against the unknown heirs, devisees or personal representatives of a decedent. Jurisdiction was denied on the ground that constructive service to be valid must be against named defendants, but the opinion clearly indicates that jurisdiction would have been upheld against a definite and named defendant. The other three cases all upheld the jurisdiction, but involved personalty (shares of stock) instead of realty. so that they are not distinct authority in the present case; yet a reading of the opinions leaves no room for doubt that similar decisions would have been rendered if the suits had been for specific performance of realty contracts. Particular reference may be made to the language of Vice-Chancellor Howell in the *Singer Case* (at *p. 577*) ; of Vice-Chancellor Stevenson in the *Amparo Case* (at *pp. 203, 204*) ; and of Mr. Justice Swayze in the same case (at *pp. 559, 560*). *Cf.,* also, *Lister* v. *Lister, 86 N. J. Eq. 30* (at *p. 36*).

The defendant argues that even if a suit *in rem* or *quasi in rem* might, under the circumstances of the present case, be brought and maintained by complainant on constructive service merely, nevertheless, this is not such a case because there is no allegation that defendants are trustees, and the prayer of the bill is for a personal decree only, that defendants perform the contract, execute a conveyance of the lands, deliver possession and account for the rents, issues and profits. This contention is, however, as it seems to me, without force, for a bill need not allege or charge the legal or equitable results of acts; it is sufficient to set forth, as the present bill does, the facts from which the legal or equitable sequences necessarily flow. The form of the prayer is the form sanctioned by immemorial usage, and, moreover, it is strictly correct, since as I have already pointed out, it is necessary, under the wording of the statute, that the form of the decree be *in personam* in order that the statute shall execute it. Possibly, some sort of a hybrid form of prayer might be devised, but to what good end? I take it that in these days, and, especially, since the amendment of 1915 to the Chancery act, neither the particular relief prayed for nor the form of the prayer is of much materiality, except upon a question of election of remedies, and on that point no question arises here, for the present bill clearly shows that complainant asks for title to the lands, not for the consideration paid or agreed to be paid by the subsequent grantee.

It may well be essential in such a case as this that the notice to the non-resident defendants should call their attention to the fact that a decree transferring their title might be rendered against them even if they did not appear. With that, however, I am not concerned. As I have already stated, there are no proofs of publication or service of the notice on file in these proceedings. Presumably, the publication was terminated by arrangement between the parties, on the making of the original motion, for it was expressly stated by defendants' counsel at the hearing that if the present case was one substantially *in rem*, in which jurisdiction could be acquired by publication, then such jurisdiction had in fact been acquired

Passing, then, to the merits, defendants contend that defendant Cooley (the subsequent grantee) is a purchaser for value without notice, and hence the bill cannot be maintained against him; and that it cannot be maintained against the other defendants without Cooley, since they have not the title to convey.

This phase of the case is not quite as simple as defendants' argument would indicate. It will be recalled that after the date for consummation of the original contract of sale, and before the recording of that contract, a deed of conveyance from vendor to his wife (who had not joined in the contract to McVoy) was executed and recorded; and that after the recording of the contract of sale, the wife, with her husband joining, executed a conveyance to Cooley. (Prior to 1919, the wife, and, therefore, also Cooley, would have taken only an equitable title (*Sipley* v. *Wass, 49 N. J. Eq. 463*) ; but *P. L. 1919 ch. 49,* makes valid a direct conveyance from husband to wife, so that Cooley took the legal title by the deed to him.) It is, or may be, necessary, therefore, to make this inquiry, as to the purchase for value without notice, both in respect of Cooley and of the wife; although, of course, if the wife took for value and without notice it would be immaterial as to whether Cooley did or did not. *Rutgers* v. *Kingsland, 7 N. J. Eq. 178; Holmes* v. *Stout, 10 N. J. Eq. 419* (at *pp. 422, 429*).

When we come to make this inquiry, however, we are met by the unusual circumstance that there is not a particle of evidence in the case as to whether the wife took with notice or without (although a strong suspicion arises from her execution of the undelivered deed to complainant) ; and, indeed, the same thing is also true as regards Cooley, for it would surely seem that the contract of sale, though in fact recorded on the acknowledgment by vendee, cannot be constructive notice when not acknowledged by the vendor. *Brinton* v. *Scull, 35 Atl. Rep. 843;* reversed, but not on this point, *37 Atl. Rep. 740.* None of the defendants testified or even appeared at the hearing.

We are driven back, therefore, to the fundamental principle forming the basis of a vendee's right to relief against a subsequent grantee, and, indeed, to a determination as to precisely

what the fundamental principle is. Must a vendee, in order to be entitled to a decree against a subsequent grantee, prove that the latter either had notice or was not a purchaser for value? Or will he prevail unless the grantee prove himself to be a purchaser for value without notice? Does the vendee by establishing his right as against the vendor thereby establish a right in respect to the lands in whatsoever hands the legal title be found unless the holder of that legal title interpose a valid defence? Or would his bill against a subsequent holder of the legal title be subject to dismissal for failure to state a cause of action, if it contain no allegations showing defendant to be (as it is sometimes expressed) privy to complainant's equity? As to this there seems to be an unexpected dearth of authority. None is cited by counsel on either side and none precisely in point has been found by a search of some length.

The theory of the grantee's liability set up by equity jurisprudence is that of trusteeship; the grantee is said to become a trustee for vendee by operation of law, just as a trust is said to arise by operation of law between vendor and vendee. But even here—that is, in the broad, general domain of trusts, there is but little authority, and that in conflict (*Cf. Bog. Trusts 514*) as to whether a grantee from an express trustee becomes a trustee for the *cestui* unless he can excuse himself by the affirmative defence of an innocent purchaser for value, or whether he becomes a trustee only if he takes with notice or as a volunteer. It is curious that most of the text-writers make absolutely no mention whatever of such a fundamental question. But the weight of authority in the adjudicated cases seems to be that the burden is on the defendant to show that he is entitled to the protection of a purchaser for value without notice.

In this state the question would appear to be settled to the same effect. In *Haughwout* v. *Murphy, 22 N. J. Eq. 531,* Mr. Justice Depue, delivering the opinion of the court of errors and appeals, says (at *p. 547*): "It is upon the principle of the transmission by the contract of an actual equitable estate, and the impressing of a trust upon the legal estate for the benefit of the

vendee, that the doctrine of the specific performance of contracts for the sale and conveyance of lands mainly depends."

In *Reeves* v. *Evans, 84 Atl. Rep. 477,* Vice-Chancellor Reed says: "The trust follows the legal estate wherever it goes except it comes into the hands of a purchaser for valuable consideration without notice," citing *Lew. Trusts *823,* that reference being as follows: "Where there was a trust, it should be considered in that court as the real estate between the *cestui que trust* and the trustee and all claiming by or under them."

The same author says (at *p. 246*): "The universal rule, as trusts are now regulated, is, that all persons who take *through or under the trustee,* except purchasers for valuable consideration without notice, shall be liable to the trust." Finally, see the opinion of Vice-Chancellor Backes in *Bridgewater* v. *Ocean City Association, 85 N. J. Eq. 379* (at *p. 384*); affirmed on that opinion, *88 N. J. Eq. 351.*

From the foregoing, then, it would appear that in the absence of statute, the subsequent grantee must bear the burden of proving that he paid value and was without notice. This burden, however, may be shifted by statute. *Bridgewater* v. *Ocean City Association, supra.* Has it been so shifted in the present case?

By sections 21 and 54 of the "Act respecting conveyances," in effect at the time of the execution of the contract of sale to McVoy, it is provided that every agreement for the sale of land in this state "shall, until duly recorded * * * be void and of no effect against subsequent judgment creditors without notice and against all subsequent *bona fide* purchasers and mortgagees for valuable consideration, not having notice thereof, whose deed or mortgage shall have been first duly recorded," but "shall be valid and operative, although not recorded, except as against such subsequent judgment creditors, purchasers and mortgagees." I confess that to my mind the language of the statute indicates no shifting of the burden of proof. The unrecorded instrument is not made invalid generally; it is made invalid only as to certain classes of persons, and is expressly declared valid except as to those classes of persons. Logically, therefore, it would seem that one in order successfully to claim the benefit of the statutory

provision must bear the burden of proving himself to be within the class of persons as to whom only the contract is declared invalid. However, it has been repeatedly held, under statutes in all respects essentially similar in language, that the burden is on the holder of the unrecorded instrument to prove that the subsequent grantee had notice. *Coleman* v. *Barklew*, *27 N. J. Law 357* (at *p. 359*); *Vreeland* v. *Clafflin*, *24 N. J. Eq. 313*; *Hodge* v. *Amerman*, *40 N. J. Eq. 99*; *Roll* v. *Rea*, *50 N. J. Law 264* (at *p. 267*); *Protection Building and Loan Association* v. *Knowles*, *54 N. J. Eq. 519* (at *p. 529*); *Paul* v. *Kerswell*, *60 N. J. Law 273* (at *p. 275*); *McGrath* v. *Norcross*, *78 N. J. Eq. 120* (at *p. 134*); *Hendrickson* v. *Wooley*, *39 N. J. Eq. 307* (at *p. 308*); *Atlantic City* v. *New Auditorium Pier Co.*, *67 N. J. Eq. 610* (at *p. 615*); the two cases last mentioned being opinions of the court of errors and appeals.

In none of these cases is there any discussion of the rationale of the conclusion. This is of course of no moment, so far as the determination of the present case on the question of notice is concerned, but it is unfortunate in regard to the question of valuable consideration, for the subsequent grantee to be protected must needs have paid value as well as having been without notice. Is the burden of proof on the holder of the unrecorded instrument to show that the subsequent grantee did not pay valuable consideration? To be consistent it must be so held, unless there be a distinction in the language of the statute as between the two factors. To my mind it is difficult to perceive such a valid distinction by reference to the statute alone. Nevertheless, in *Coleman* v. *Barklew, supra* (which is apparently the ultimate basis of all the other authorities in the list above), there is an indication that the supreme court there thought that persons having notice were made by the statute an exception to the class or classes as to which the unrecorded instrument was made invalid; that the words "not having notice" are to be construed "unless he have notice." A similar indication is found in *Mc-Grath* v. *Norcross, supra* (at *p. 134*.) If such is to be deemed the proper interpretation of the language of the act (and I conclude from these two cases that it is), namely, that the unrecorded instrument is to be deemed void as to subsequent pur-

chasers for valuable consideration, except such as have notice thereof, then it is logical enough to requie the holder of the un-recorded deed to prove that the subsequent grantee had notice, while requiring the latter to prove himself to have paid value. The former would have the burden of bringing himself within the general classification of the statute, whereas the burden of proving that he also came within the exception out of that general class would rest upon the latter.

I conclude, then, that defendants in the present case have the burden of proving that Mrs. Baumann or Cooley paid value.

There may also be noted in support of this conclusion, in addition to what has been said earlier herein under the discussion as to notice, that the facts as to payment of consideration are peculiarly within the knowledge of defendants, it not being likely that complainant would have any knowledge thereof; also the language of this court in *Van Doren* v. *Todd, 3 N. J. Eq. 397* (at *p. 415*) [the italics are mine]: "Nor is there any one who claims that sum that *proves himself a bona fide purchaser,* paying his purchase-money without notice;" and of the court of errors and appeals in *Graves* v. *Coutant, 31 N. J. Eq. 763* (at *pp. 778, 779*): "Upon the last point I agree with the master in his opinion, that her [defendant's] uncertain statement of the consideration paid by her for this conveyance, and the small sum of $1,000 in money which she says she has paid, *are insufficient evidence of a fair purchase for a good consideration* of the large and valuable property described in the deed to her. * * * It is not only necessary that a defendant setting up a defence of a *bona fide* purchaser should clearly and unequivocally state in the answer that the purchase was for value, without notice, but he must also set forth all particulars of the purchase and must distinctly prove them. There has been a failure in this particularity both in the answer and in the proof in this case."

These two cases were both on bills to enforce a vendor's lien, and hence did not come under the scope of the recording statute. However, that the statute makes no change in this behalf on the question of purchase for value is indicated by *Griffin* v. *Griffin, 18 N. J. Eq. 104,* a case under the New York Recording act, apparently similar to ours, where Chancellor Zabriskie says (at *p.*

*107*) : "The complainant is not a purchaser for a valuable consideration. Her claim is as dowress and by releases from her children, which are for a nominal consideration; *she does not prove any consideration.*"

And in *Holmes* v. *Stout, 10 N. J. Eq. 419* (at *pp. 426, 427*), the court of errors and appeals explicitly points out that our statute, like that of New York, makes the unrecorded deed void only as against a subsequent *bona fide* purchaser for valuable consideration.

Again, the defence of the statute is a purely legal one, as to which it is said by the court of errors and appeals in *Page* v. *Martin, 46 N. J. Eq. 585* (at *p. 589*), that it must be clearly made out by him who sets it up. *Cf.,* also, *Crandall* v. *Graham, 115 Atl. Rep. 178* (at *p. 180*).

I am unable to find anything in the case to sustain that burden on behalf of defendants. There was, as has been said, no evidence or testimony offered by defendants, and there is nothing in the complainant's proof upon which they can rely. The fact that the deeds of conveyance were made to Mrs. Baumann and Cooley was alleged in the bill and admitted in the answers, but the payment of consideration is not admitted by complainant's pleadings and neither the deeds themselves or the record thereof were offered in evidence. Hence, the rule that where the deed itself purports to be for valuable consideration it will be taken as sufficient proof thereof in the absence of any evidence to the contrary—*Holmes* v. *Stout, supra* (at *p. 424*) ; *Roll* v. *Rea, 50 N. J. Law 264* (at *p. 267*)—cannot be applied. Neither can it be said, as to the deed to Mrs. Baumann, that in such a case as this the relationship of husband and wife constitutes sufficient consideration. *Cf. Annin* v. *Annin, 24 N. J. Eq. 184.*

Defendants' contention that specific performance will not be decreed because complainant has an adequate remedy at law is without merit. *Dobbin* v. *Plager, 111 Atl. Rep. 404.* Moreover, the argument made in this behalf, based on the fact that complainant had already contracted to sell the lands in question, tends to support rather than to negative specific performance, since without it the subsequent contract could not be performed.

Defendants next contend that complainant is barred because vendor attended and was ready and willing to perform at the time and place agreed on, and complainant was not then able to perform. The answer to this is of course that under the contract in question, time was not of the essence, and that complainant was within a reasonable time ready and willing to perform and tendered such performance. Furthermore, I am entirely satisfied from the evidence that vendor agreed to postpone the consummation. Vendor not only had no right to rescind, but did not attempt to rescind, or at least gave no such notice to complainant until after complainant's tender of performance.

The next contention of defendants, that complainant, as the assignee of the contract of sale, cannot have specific performance, is also without merit. *Pom. Eq. Rem. (2d ed.)* § *851; Story (14th ed.)* § *1024; 2 Warv. Vend. & Pur. (2d ed.) 864; Bateman* v. *Riley, 72 N. J. Eq. 316; Smith* v. *Anderson, 84 N. J. Eq. 681.* It is no objection that there is a want of mutuality of obligation prior to suit brought by vendee's assignee. The criterion is mutuality of remedy at the time of decree. The assignee (complainant) has brought suit and placed herself within the jurisdiction of the court, and can be compelled to perform. *Richards* v. *Green, 23 N. J. Eq. 536. Naugle* v. *McVoy, 115 Atl. Rep. 393,* is of course in nowise any adjudication to the contrary.

The final argument of defendants is that Mrs. Baumann was not a party to the contract of sale to McVoy, and hence the suit will not lie against her. This is true in a sense; if she had not conveyed her inchoate dower interest to Cooley she could not be compelled to convey to complainant, for she never contracted with complainant or complainant's assignor to convey; neither will there be made in this suit, under the circumstances that have actually happened, any decree that she convey. Nevertheless, she is of course a proper party to the suit, if not, indeed, a necessary party. But no conveyance, or decree for conveyance, from her is necessary; her dower interest was extinguished by merger in the fee conveyed to her, and any possible contingent curtesy of her husband was extinguished by the deed to Cooley,

and the conveyance, or decree for conveyance, from him to complainant will carry the title free of any encumbrances of dower or curtesy. The case is very similar in this aspect to *Saldutti* v. *Flynn,* *72 N. J. Eq. 157,* and the procedure therein outlined would be adopted here were it not for this distinct variation; in the present case there is the double conveyance (from Baumann to his wife and from her to Cooley), and there is no evidence as to what, if anything, was paid, or agreed to be paid by the wife to Baumann, or by Cooley to either Baumann or Mrs. Baumann. There is nothing to show, therefore, that there are any equities which require adjustment as among the defendants, and so far as complainant is concerned, then, there are not; and if, as among defendants themselves, there be in fact such equities, complainant should not be delayed thereby, they having seen fit to introduce no evidence thereof at the hearing. I think the decree should provide for the payment to Baumann by complainant of the unpaid balance of purchase price, although, if defendants desire, the payment can be made into court and the several interests of defendants therein as amongst themselves thereupon be determined.

Complainant is entitled to costs as against all the defendants. Of course, if the jurisdiction of this court in the case rested solely on constructive service, no personal decree, even for costs, could be made against any of the defendants. But by reason of the condition imposed in the orders for leave to answer, and the subsequent acts of the defendants, and the final determination against them of their original objection to the jurisdiction, they are now before the court on voluntary general appearance in the suit.