The present bill initiates still another chapter in the voluminous litigations amongst the parties to this suit. It *Page 111 
is filed by complainant, the holder of a certain mortgage at Westfield, New Jersey, seeking a declaration of her rights under that mortgage, under the provisions of the Uniform Declaratory Judgments act (P.L. 1924 ch. 140 p. 312), which was enacted subsequent to the prior proceedings in this court for the same purpose. Naugle v. Baumann, 96 N.J. Eq. 183; 2 N.J. Adv. R.1172.
Complainant's husband, Karl Baumann, owning the lands in question, contracted July 19th, 1920, to sell and convey them to Herbert McVoy. Complainant was not a party to this contract. McVoy assigned to his wife, Mary McVoy. Baumann, instead of performing the contract, conveyed to complainant, and she conveyed to one Cooley, November 9th, 1920, taking back a purchase-money mortgage for $2,700, which is the subject of the present bill. Mrs. McVoy sued the Baumanns and Cooley and obtained decree that Cooley convey to her. McVoy v. Baumann,93 N.J. Eq. 360; Ibid. 638.
Subsequent to the affirmance of this decree Cooley tendered Mrs. McVoy a deed which she refused to accept, as not being in proper form in compliance with the decree. Thereupon Cooley executed and delivered a deed of conveyance of the premises to Ruth C. Naugle, subject to the mortgage in question. Thereafter Mrs. McVoy recorded a copy of the decree.
Immediately after the original Baumann-McVoy contract Reginald Naugle (Ruth Naugle's husband) had contracted with McVoy for the purchase and conveyance of the premises, or a portion thereof, and he has filed bill in this court, still pending, for specific performance of that contract against the McVoys.
Complainant has made the McVoys, Cooley and the Naugles defendants to her bill, and brought them into court, and asks a determination as to whether or not her mortgage is a valid and subsisting lien upon the land described therein.
There is no doubt in my mind but that complainant's mortgage is not a valid and subsisting lien upon the lands. *Page 112 
It was determined in McVoy v. Baumann, supra, that Mrs. McVoy was the equitable owner of the premises; that neither complainant nor Cooley were bona fide purchasers for value without notice, and that Cooley therefore held the title in trust for Mrs. McVoy, and the decree directed him to convey that title to her. There is no reference to the mortgage in that decree for the very good reason that it was not in evidence; there was no evidence as to the mortgage, or as to what the facts were as to payments made or due between Cooley and the Baumanns. See the opinion, page 379. But, of course, the practical effect of that determination and that decree was to eliminate any and all rights or claims of the Baumanns and Cooley, of, in or respecting these lands, as against Mrs. McVoy, so far, at least, as such rights or claims arose out of the transaction there sub judice, excepting, of course those rights which were preserved in the decree, namely, to the payment of the balance of the purchase-money. If the mortgage had been in evidence in that suit, undoubtedly the decree would have directed its cancellation, in order to accomplish a complete determination of the rights of the parties. Mrs. Baumann had the opportunity in that suit to present the mortgage and her claims thereunder; that she failed to do so does not prevent the matter from being resadjudicata. As a matter of fact, upon the request of herself, and her husband and Cooley, the decree provided that the unpaid balance of purchase price due from Mrs. McVoy should be paid into court, so that their several equities or interests therein might be thereafter determined as amongst themselves.
As I understand complainant's argument, it is not contended that the situation is otherwise than what I have so far indicated. Her contention is that her rights under the mortgage have become revived by subsequent occurrences. The argument is succinctly as follows:
"That the deed tendered by Cooley to Mrs. McVoy was a proper deed, fully complying with the directions of the decree in the original suit; that Mrs. McVoy's refusal to accept that deed operated to reinvest the equitable title in *Page 113 
Cooley, who still held the legal title, and he thereby became vested of the entire title absolutely, and that this therefore operated to validate the mortgage in question."
It is stated in complainant's brief that the mortgage, although dated November 9th, 1920, was not delivered until September 30th, 1922, the date of its recording. There is no such allegation in the bill, and no admission in the McVoys' answer; nor do I recall any evidence thereof in the proofs; while, on the contrary, the mortgage bears an acknowledgment of its execution and delivery
by Cooley on November 12th, 1920. I think, however, that this question is immaterial, for I am quite willing to assume,arguendo, at least, that if Cooley became reinvested of the equitable title, the mortgage if, in fact, delivered previously, would thereby have become just as valid and effective as if executed and delivered thereafter.
It is further argued by complainant that the decree in the original suit did not operate to divest the legal title from Cooley and vest it in Mrs. McVoy, under the forty-fifth section of the Chancery act, for the reason that that statute, by its express terms, operates only if "the party against whom the decree shall pass shall not comply therewith by the time appointed," and that in the present case Cooley did comply with the decree, and hence the statute could not operate to make the decree a conveyance.
This latter argument opens up some interesting questions, and, if sound, might prove unsettling to a considerable number of titles resting on such decrees. In the instant case, however, it will be sufficient to point out that complainant did not in fact comply with the decree by the time appointed, and hence that the decree did become operative under the statute as a conveyance from Cooley to Mrs. McVoy.
In the first place, the "time appointed" by the decree was "within ten days" from the date of the decree, February 24th, 1922, and the tender of the deed was not made until June 23, 1922. True it is that in the meantime an appeal from the decree was pending, but the statute referred to *Page 114 
contains no exception in that behalf, and it has heretofore been determined in this court that the pendency of such appeal does not prevent or delay the operation of the statute. White v.Smith, 60 Atl. Rep. 399 (at p. 402).
In the second place, the deed tendered was not a proper compliance with the decree, as I have already had occasion to determine in Re Cooley, 95 N.J. Eq. 485, on substantially the identical evidence now before me. Complainant contends that the language of the deed tendered, to the effect that the intent of the deed is to convey the title subject to the inchoate dower right of Bertha Baumann, is at most mere surplusage (because it could not in fact operate to create such a dower right if none existed). I am unable to acquiesce in this view. In express terms it conveys subject to an encumbrance; it expresses a failure to convey the full and complete title, and, in any event, the language of this deed, upon which Mrs. McVoy's title was to rest, would itself cast a cloud upon that title. This was in nowise warranted or justified by the decree or the facts, and in my view it was not a compliance with the decree. As I shall proceed to show hereafter, there was no dower interest outstanding in Mrs. Baumann, and, moreover, the intent and effect of the decree was to accomplish or establish that very fact, inter alia.
I am not sure, from complainant's brief, whether it is intended to urge in the present case the same contentions as to laches, abandonment and acquiescence which were argued, considered and determined in the proceedings on application for writ of assistance. McVoy v. Baumann, 95 N.J. Eq. 335. If so, it is sufficient to say that, although that determination may not beres adjudicata against complainant, since strictly she was not a party to that proceeding, and had no opportunity to be heard therein, nevertheless, the issues rest upon precisely the same evidence, and the rule of stare decisis leads, of course, to the same result there affirmed by the court of errors and appeals.
I think it is evident, therefore, that the decree conveyed the title to Mrs. McVoy by force of the statute, and that *Page 115 
the mortgage, whether delivered before or after such passing of title, is utterly without force or validity as a lien upon Mrs. McVoy's property.
That no outstanding dower right remained in complainant was determined by the opinion in the original suit. McVoy v.Baumann, 93 N.J. Eq. 360 (at p. 378). The decree contains a recital or finding that complainant and her husband had "conveyed their interest" in the premises to Cooley, and decrees specific performance by Cooley of Baumann's agreement, and conveyance by Cooley to Mrs. McVoy. Baumann's agreement was to convey the entire premises free from all encumbrance. It seems to me, therefore, that this question of outstanding dower right is resadjudicata.
In any event, however, it is clear to me that there is no merit in complainant's contention. The ingenious argument is put forward that by the determination and decree in the original suit Baumann's contract to McVoy conveyed the equitable title in the premises, and thereafter he held only the bare legal title as trustee for McVoy; that his subsequent conveyance to his wife therefore was only of the bare legal title to her as trustee, and hence there was no merger of her dower; that her subsequent conveyance to Cooley was of the bare legal title to him as trustee, and neither conveyed her dower to Cooley (dower not being susceptible of conveyance) nor released her dower nor barred it by estoppel.
Doubtless, technically, there was no merger of complainant's dower, nor a release thereof, by the two conveyances mentioned, but by estoppel that result must be deemed to have happened. It is perfectly clear from the evidence in the original suit (which is also evidence in the present suit) that the Baumanns at the time of these two conveyances believed that the McVoy contract had become unenforceable because of what they believed was McVoy's default, and that they intended by these conveyances to deal with the entire interest, legal and equitable, in the premises, According to their intent, the conveyance by Baumann to his wife merged her dower in the fee; according to theirintent their conveyance *Page 116 
to Cooley conveyed the premises freed and discharged of complainant's dower. Since these attempts and these intents were in fact violative of the equitable rights of the McVoys, and were done by the Baumanns, not being purchasers, for value without notice, it is equitable, and not inequitable, to hold them estopped from denying the results which they actually intended, so far, at least, as is required under the circumstances of the case to accomplish complete equity for the McVoys, and, so far as no inequity is thereby caused, to result to the Baumanns.
It is necessary to hold them so estopped in order to accomplish complete equity for the McVoys, for Baumann's contract was to convey to McVoy free of complainant's dower. That he might not have been able to do this, since his wife was not a party to that contract, does not alter the fact that he had bound himself so to do, and hence, if the subsequent circumstances placed him (or the subsequent grantee. Cooley) in a position of ability to convey free of that dower, it is equitable that such conveyance, free of dower, should be made.
No result inequitably affecting complainant is thereby entailed. It may be taken as true that complainant, who was not a party to her husband's contract with McVoy, had not bargained for nor consented to release her dower to McVoy, and that she could not have been compelled to do so if the subsequent conveyances had not been made. It may also be assumed that if only the deed from Baumann to his wife had been made, and no deed from the Baumanns to Cooley, the decree in the original suit could not have provided for a conveyance to McVoy free of dower, but must have protected complainant in her dower. But it is perfectly clear (in the absence of any evidence or intimation to the contrary) that at some time in the double transaction complainant did bargain for, or voluntarily consent to, a release of her dower (unless the whole proceedings were intended as a fraud on McVoy, in which event, of course, the doctrine of estoppel would be only the more strongly reinforced). Why the deed from Baumann to her was made does not appear, nor the circumstances *Page 117 
thereof. It may or may not be the fact that she paid her husband the value of the property less the value of her dower right. Or it may be that it was a mere step to the conveyance to Cooley, and that from the consideration for that later conveyance she was to get paid for her dower interest. What the bargain was as between the husband and wife does not in anywise appear. The two deeds (which were not in evidence in the original suit, but are in the present suit) each recite a consideration of one dollar. But the mortgage, and the statements in complainant's bill, show that she was to get, and did get, a bond and mortgage from Cooley for $2,700, and her deed conveyed to Cooley free of her dower or other encumbrance. From all the evidence, therefore, it is clear that she did bargain to release, extinguish or bar her dower, and that such release or extinguishment was voluntary on her part. Doubtless, if it had been accomplished as the result of fraud or other inequity upon her by her husband, a situation would be presented which might require the protection to her of her dower right as against McVoy, but there is no such evidence or contention.
Having so bargained for and voluntarily attempted and intended to extinguish her dower, the only thing which equity requires that she be protected in, as against the McVoys, is that she obtain either the fair value of that dower right or the value or price which she may have agreed to accept therefor. She is not, of course, entitled as against the McVoys, to be protected to the extent of the value of the premises over and above the dower right, because as to that the equity was in the McVoys as against her. This protection to her of the value or price of her dower right was accorded and provided for her in the decree, which, upon her consent or request, directed Mrs. McVoy to pay into court the $3,000 unpaid balance of the purchase price of the McVoy-Baumann contract, with interest, in order that the several rights or interests therein of Mrs. Baumann, her husband and Cooley might be determined as amongst themselves. Such payment was actually made into court by Mrs. McVoy, as appears by the evidence in this case (despite the *Page 118 
statement to the contrary in complainant's brief), and the moneys are and have been for a long time there available to complainant and the others, although for some reason they have preferred to indulge in further fruitless litigation rather than have determined and obtain their respective shares thereof. Since this opportunity is still open to complainant, and includes the opportunity for her to prove and obtain whatever is equitably due to her in lieu of her bond and mortgage, as well as what is due to her in respect of the value of her dower interest; and since there has been no evidence in this suit as to the respective interests of the Baumanns and Cooley in that fund, there is neither propriety nor opportunity to attempt to deal with that problem in the decree in this cause under the prayer for other or general relief.